UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 14-143-DLB-CJS

MARK SHAPIRO                                                              PLAINTIFF


v.                              **REPORT & RECOMMENDATION**


FIDELITY INVESTMENTS INSTITUTIONAL
OPERATIONS COMPANY, INC.                                        DEFENDANT


\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on three pending motions: Defendant's Motion to Dismiss Plaintiff's Amended Complaint (R. 11); Plaintiff's Motion for Leave to File a Second Amended Complaint (R. 15); and Defendant's Alternative Motion to Dismiss Plaintiff's Second Amended Complaint (R. 25). This matter has been referred to the undersigned for preparation of a report and recommendation under 28 U.S.C. § 636(b). (R. 17). The above motions have been fully briefed and are ripe for the Court's review. (*See* R. 16, 21, 22, 23). For the reasons explained herein, it will be recommended that Defendant's Motion to Dismiss (R. 11) be **granted**, Plaintiff's Motion for Leave to File his Second Amended Complaint (R. 15) be **denied**, and Defendant's Alternative Motion to Dismiss Plaintiff's Second Amended Complaint (R. 25) be **denied as moot**.

I.      **STANDARD OF REVIEW**

Defendant Fidelity Investments Institutional Operations Company, Inc. ("Fidelity") seeks to dismiss Plaintiff Mark Shapiro's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 11). When adjudicating a motion to dismiss under 12(b)(6), the Court must determine

whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a 12(b)(6) motion to dismiss, the Court is required to "accept all the Plaintiff['s] factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). If an allegation is "capable of more than one inference, it must be construed in the plaintiff's favor." *Ashland Hosp. Corp. v. Int'l Bhd. of Elec. Workers Local* 575, 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011) (*quoting Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted)). The Court need not, however, accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678.

## II.  FACTUAL BACKGROUND

Pursuant to the 12(b)(6) standard for reviewing a motion to dismiss, the following is a summary of the factual allegations, accepted as true, set forth in Plaintiff's Amended Complaint (R. 6). Plaintiff Mark Shapiro began serving a prison sentence on a federal criminal conviction in March 2006. (R. 6, at ¶ 9). At the time, he had a 401(k) retirement plan account, which he established while he was an employee at Cobalt Capital Companies, LLC. (*Id.* at ¶¶ 6-8). Shapiro's 401(k)

account was administered by Defendant, Fidelity Investments, at its Covington, Kentucky office. (*Id.* at ¶ 7).

After Shapiro began his prison sentence, he contacted William Foster, President of Cobalt, about utilizing funds in his 401(k) account for legal expenses. (*Id.* at ¶ 11). Foster contacted Fidelity and was informed that Shapiro's 401(k) account had been liquidated. (*Id.* at ¶ 12). Documentation later obtained from Fidelity's Covington, Kentucky office indicated that on July 26, 2006, Fidelity issued a check in the amount of $19,765.50, payable jointly to Shapiro and an individual named Travis Suber at an address in Longmeadow, Massachussetts. (*Id.* at ¶ 13). The issuance of the check constituted a total liquidation of Shapiro's 401(k), with the remaining funds presumably withheld for potential tax consequences. (*Id.*). This liquidation occurred without Shapiro's knowledge or consent. (*Id.* at ¶ 14). Further, Shapiro never authorized Travis Suber to have any interest in the 401(k) plan, and Shapiro at no time resided at or received mail at the address in Longmeadow, Massachusetts, where Fidelity sent the check. (*Id.*).

At the request of Shapiro's counsel, on August 30, 2006, Fidelity provided Shapiro with a copy of the liquidation check and a blank Affidavit of Forgery for Shapiro to complete and return. (*Id.* at ¶ 15). Fidelity also assigned an employee in the Covington, Kentucky office to investigate the matter. Upon review of the liquidation check, Shapiro confirmed that his signature had been forged. (*Id.* at ¶ 16). Shapiro completed the Affidavit of Forgery and returned it to Fidelity's Covington, Kentucky office in September 2006. (*Id.* at ¶ 16). In November 2006, Shapiro sent a letter to Fidelity's Covington office referencing the Affidavit of Forgery, and requesting reimbursement of the fraudulently liquidated funds. (*Id.* at ¶ 17). In the same month, Shapiro also

3

sent a letter to the Longmeadow, Massachusetts Police Department reporting the fraudulent liquidation of his 401(k) account.  (*Id.* at ¶ 18).

Shapiro remained incarcerated, and heard nothing further from Fidelity or the Longmeadow Police Department about the matter.  (*Id.* at ¶ 19).  Shapiro assumed that his 401(k) account was reimbursed for the fraudulent liquidation.  (*Id.*).  On May 15, 2014, Shapiro sent a letter to Fidelity's Covington office inquiring about the status of his 401(k) account, and requested a detailed explanation of the investigation of the fraudulent liquidation and confirmation that his account had been reimbursed.  (*Id.* at ¶ 20).  On May 29, 2014, Fidelity responded to Shapiro's inquiry, indicating that his 401(k) plan terminated on November 6, 2006.  (*Id.* at ¶ 21).  The letter did not otherwise detail the results of Fidelity's investigation, or whether Shapiro's 401(k) had been reimbursed.  (*Id.*).

## III.    PROCEDURAL BACKGROUND

On August 1, 2014, Shapiro, proceeding *pro se*, filed the present suit against Defendant Fidelity Investments.  (R. 1).  Shapiro's Complaint asserts claims of negligence and breach of fiduciary duty under the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") for the unauthorized July 26, 2006, liquidation of his 401(k) account.  (*Id.*).  Shapiro later filed an Amended Complaint to clarify that venue was proper in the Eastern District of Kentucky.  (R. 6).

Fidelity has moved to dismiss Shapiro's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Shapiro's state law claim of negligence is preempted by ERISA, and because Shapiro's claim for breach of fiduciary duty is barred by the applicable statute of limitations.  (R. 11).  In lieu of a response, Shapiro filed a Motion for Leave to File his Second Amended Complaint.  (R. 15).  Plaintiff first clarifies that he is not asserting a stand-alone claim for

4

negligence under state law.  (R. 15, at 1).  Plaintiff next explains that his Second Amended Complaint cures the statute of limitations deficiency by alleging Fidelity's misconduct was continuing in nature, and extended well beyond the date when Plaintiff's 401(k) account was fraudulently liquidated.  (*Id.* at 2).  The Second Amended Complaint also alleges that Fidelity retained a continuing fiduciary relationship with Shapiro even after his 401(k) plan terminated in November 2006.  (*Id.*).

Defendant opposes Plaintiff's Motion for Leave to Amend, arguing that amendment would be futile because Plaintiff's "continuing violation" theory is not applicable to claims that fall under ERISA's limitation period.  (R. 16).  Even if courts recognized the equitable exception in the context of ERISA cases, Defendant argues Plaintiff's allegation "Fidelity continued to breach its fiduciary duty to [him] by failing to properly reimburse his 401(k) account for the full amount of the fraudulent liquidation," does not constitute a new breach, but rather a failure to correct the alleged initial breach.  (*Id.* at 6).  Thus, Defendant concludes Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied as futile because Plaintiff's claims are still barred by the applicable statute of limitations.  Alternatively, Defendant moves to Dismiss Plaintiff's Second Amended Complaint.  (R. 25).[1]

Plaintiff has filed a combined Reply in support of his Motion for Leave to File a Second Amended Complaint (R. 22), and a Response to Defendant's Alternative Motion to Dismiss the Second Amended Complaint (R. 21).  Plaintiff argues that the Court should allow him to amend his Complaint, because the amendments will cure any statute of limitations issues.  Plaintiff states that

---

[1] Although not consecutive docket entries, Defendant's Alternative Motion to Dismiss Plaintiff's Second Amended Complaint (R. 25) was filed contemporaneously with its Response in Opposition to Plaintiff's Motion to Amend (R. 16).

the Second Amended Complaint asserts fraud or concealment, and therefore the six-year statute of limitations commenced the date of discovery of the breach or violation under 29 U.S.C. § 1113. Plaintiff maintains that because Defendant engaged in fraud or concealment, the statute of limitations only began to run when Fidelity provided him with formal notice on September 26, 2014, that it did not fully reimburse his account. (*Id.* at 8). In the alternative, Plaintiff argues that the earliest the statute of limitations could have started was July 10, 2013, the date when Fidelity turned over his account balance to the Unclaimed Property Division of the Massachusetts State Treasurer. (*Id.*).

In his combined Reply/Response, Shapiro also requests the Court liberally construe his Complaint as stating a cause of action under 29 U.S.C. § 1132, which is not subject to the statute of limitations found in 29 U.S.C. § 1113. Shapiro notes that allegations in *pro se* pleadings are entitled to liberal construction, and because he seeks to recover money he placed in his retirement account that was administered by Fidelity, the Court should broadly construe his claim as an attempt to "recover benefits" and "enforce rights" due to him under the "terms of the Plan." (R. 22, at 9). Shapiro explains that when liberally construed as a cause of action under 29 U.S.C. § 1132, his claims would be timely. (*Id.* at 10).

In its Reply, Fidelity reiterates its position that Shapiro's proposed Second Amended Complaint is futile, because it is still barred by the statute of limitations. (R. 23, at 1). Fidelity also opposes Shapiro's request that the Court construe the facts to assert a cause of action under 29 U.S.C. § 1132, noting that the facts do not support such a claim, and even if they did, Shapiro has failed to exhaust his administrative remedies as required under Sixth Circuit precedent. (R. 23, at 5-6).

6

# IV.    ANALYSIS

## A.    Defendant's Motion to Dismiss

In considering a Rule 12(b)(6) motion, a court must take well-pled allegations as true and construe them most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

In his Motion for Leave to File a Second Amended Complaint, Plaintiff stipulates that he is not pursuing a negligence claim under state law, acknowledging that the claim "indeed may be preempted by ERISA." (R. 15, at 1-2). Thus, the Court need only address Defendant's second argument that Plaintiff's ERISA breach of fiduciary claim should be dismissed as time barred.

Breach of fiduciary duty claims under ERISA are subject to the limitations period articulated in 29 U.S.C. § 1113, which provides:

> No action may be commenced with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of–
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.
>
> Except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

7

29 U.S.C. § 1113.  In other words, when a fiduciary breaches an obligation or duty, the victim of the breach normally has six years from the last act or date to cure in which to file suit.  29 U.S.C. § 1113(1).  However, that period may be shortened to three years if the victim had "actual knowledge" of the breach or violation.  29 U.S.C. § 1113(2).  The Sixth Circuit interprets "actual knowledge" as:

> [T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute. This view . . . furthers the policies underlying statutes of limitations.  Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims.

*Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003).  If there is fraud or concealment, however, the six-year limitations period does not begin until the date of discovery.  29 U.S.C. § 1113.

Here, Defendant asserts Plaintiff's cause of action accrued sometime in 2006, and thus is time barred under application of either the six-year or three-year statute of limitations.  (R. 11-1, at 8).  In support, Defendant notes Plaintiff's Amended Complaint alleges that Fidelity breached its fiduciary duty when it issued a check in July 2006 liquidating his account.  (*Id.* at 7).  When the six-year statute of limitations is applied to the date of the last action which constituted a part of the breach (here, the July 26, 2006, liquidation of Plaintiff's 401(k) account), Plaintiff's present suit filed August 1, 2014, is not timely.  (*Id.* at 7-8).

Defendant also asserts that the more stringent three-year statute of limitations should apply to the present case.  In support, Defendant relies on Plaintiff's statement in his Amended Complaint that he "learned that his 401(k) account had been fraudulently liquidated" sometime around August

8

2006.  (*Id.* at 8).  Thus, Defendant contends that because Plaintiff admits he was aware of the breach sometime around August 2006, the statute of limitations expired three years after Plaintiff gained "actual knowledge" of the breach of which he now complains.  (*Id.*).

The Court need not decide whether Plaintiff had "actual knowledge" of the alleged breach so as to trigger the shorter three-year statute of limitations because Plaintiff's breach of fiduciary claim fails even under the more lenient six-year limit.  Plaintiff alleges in his Amended Complaint (R. 6) that Fidelity breached its fiduciary duty to him on July 26, 2006, when it: (1) permitted an unauthorized party to fraudulently liquidate his 401(k) account; (2) issued a check payable jointly to Plaintiff and an individual not authorized to have any interest in Plaintiff's 401(k) account; and (3) sent the check to an address in Longmeadow, Massachusetts at which Plaintiff never resided or received mail.  (R. 6, at ¶ 23).  These material facts upon which Plaintiff bases his claim for breach of ERISA fiduciary duties occurred more than six years before he filed this action on August 1, 2014. Because Plaintiff did not file his Complaint within six years after these alleged facts occurred, his claim is time barred by 29 U.S.C. § 1113(1), and should be dismissed.  However, Shapiro may be able to survive a dismissal if he is able to show by his proposed Second Amended Complaint that he is entitled to relief.

### B.       Plaintiff's Motion for Leave to File Second Amended Complaint

In lieu of a response to Defendant's Motion to Dismiss (R. 11), Plaintiff instead moves for Leave to file a Second Amended Complaint.  (R. 15).  Federal Rule of Civil Procedure 15 provides the framework within which a party may amend or supplement a pleading.  Under this Rule, a party is entitled to "amend its pleading once as a matter of course" before being served with a responsive pleading, or within 21 days of being served with a responsive pleading or motion under Rule

12(b),(e), or (f).  Fed. R. Civ. P. 15(a)(1).  In all other cases, Federal Rule of Civil Procedure 15(a)(2) permits plaintiffs to file an amended pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Here, since Plaintiff has already amended his complaint once as a matter of right (R. 6), and Fidelity has not consented to his second request, the Court's leave to amend is required for Plaintiff to file a second amended complaint.

Rule 15(a)(2) directs the Court to "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Although the Rule does not define the circumstances of when "justice so requires," the Court may deny a motion to amend if the proposed amendment would be futile.  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 519 (6th Cir. 2010) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.  *Id.*; *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Rev. Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993).  Furthermore, whether or not "justice so requires" is a question "committed to the district court's sound discretion."  *Moore*, 790 F.3d at 559.  However, the Supreme Court has recognized that "it has been considered an abuse of discretion and reversible error to deny leave to amend unless there is a good reason for the denial."  *Foman*, 371 U.S. at 183.

### 1.   The fraud or concealment exception to the statute of limitations does not apply.

In the present case, granting Plaintiff's Motion to File his Second Amended Complaint, as requested, would not cure the fatal statute of limitations problem with regard to his ERISA breach of fiduciary duty claim.  As explained above, under the ERISA statute of limitations, when a fiduciary breaches an obligation or duty, generally the victim of the breach will have six years in which to file suit.  29 U.S.C. § 1113.  Where the victim has "actual knowledge" of the breach, the

statute of limitations is shortened to three years.  29 U.S.C. § 1113(2).  However, the statute provides

an exception for a case involving "fraud or concealment," extending the filing period to a date no

later than six years after the discovery of the violation.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542,

548 (6th Cir. 2012).

Here, Shapiro argues that his Second Amended Complaint cures the statute of limitations

deficiency by alleging that "Fidelity led [Shapiro] to believe that the matter would be properly

investigated and resolved by way of fully reimbursing his account, only to later conceal the fact that

full reimbursement did not occur and that Fidelity's administration of the Plan terminated." (R. 22,

at 8).  Thus, Shapiro contends that the "fraud or concealment" exception should apply.

ERISA's fraud exception to the statute of limitations "requires the plaintiffs to show (1) that

defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing

and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, (3) despite

their exercise of diligence." *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564,

573 (6th Cir. 2010) (citation omitted).  The second element is particularly critical in the present case,

because the alleged inaction that Plaintiff contends constitutes fraud and concealment occurred after

August 2006, the time when Plaintiff states he became aware of the facts underlying the alleged

fraudulent liquidation of his 401(k) account.

The Sixth Circuit "follows the discovery rule, which provides that the statute of limitations

begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his

action and that a plaintiff has reason to know of his injury when he should have discovered it through

the exercise of reasonable diligence." *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007); *see also*

*Brown*, 622 F.3d at 573.  "Unsophisticated or not, plaintiffs cannot shroud themselves in ignorance

11

or expect that their unsophistication will thoroughly excuse their lack of diligence . . . Requiring due diligence encourages plaintiffs to take action to bring the alleged fraud to light, grants some sense of repose to defendants, and assures that evidence presented on the claim will be fresh." *Dublin Eye Assoc. P.C. v. Mass. Mut. Life Ins. Co.*, 957 F. Supp. 2d 843, 847 (E.D. Ky. July 12, 2013) (*quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson*, 76 F.3d 1245, 1260 (1st Cir. 1996)).

While the fraud exception articulated in 29 U.S.C. § 1113 tolls the statute of limitations where a fiduciary has attempted to hide the alleged breach from the party commencing the action, the fraud exception is inapplicable here. To warrant application, a complaint must allege affirmative steps taken by the defendants to prevent a plaintiff from discovering the alleged breach. *Hallowell v. Cincinnati Ventilating Co., Inc.*, 711 F. Supp. 2d 751, 769 (E.D. Ky. 2010) (*citing Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)). In his proposed Second Amended Complaint, Plaintiff asserts that Fidelity maintained a fiduciary relationship with him until at least May 29, 2014, the date it provided notice of the plan termination. (R. 15-2, at ¶ 24). Plaintiff asserts the fraud exception applies because "Fidelity continued to breach its fiduciary duty . . . by failing to properly reimburse his 401(k) account for the full amount of the fraudulent liquidation." (*Id.* at ¶ 22). Plaintiff continues, "[a]s a result of Fidelity's continuing mistake, error, or negligence, [Plaintiff] had a reasonable basis to believe, and did believe that Fidelity had fully reimbursed his 401(k) account after he properly notified Fidelity of the fraudulent liquidation." (*Id.*). Plaintiff maintains he "was never informed otherwise, nor of the Plan's termination, until Fidelity corresponded with him on May 29, 2014, and September 26, 2014." (*Id.*). These allegations, however, do not amount to allegations of affirmative steps taken by Fidelity to conceal its alleged breach.

12

First, because Plaintiff states he was advised that his account had been fraudulently liquidated around August 2006, he would have already been on notice of the alleged wrong–Fidelity's failure to protect Plaintiff's funds from fraudulent liquidation–when the alleged concealment occurred. (R. 15-1, at ¶ 6; R. 15-2, at ¶ 10). Second, Plaintiff's allegations at most show inaction on the part of Fidelity. Inaction alone "does not rise to the level of active concealment, which is more than merely a failure to disclose." *See Brown*, 622 F.3d at 574 (citation omitted). "Concealment by mere silence is not enough . . . [Defendant] must have engaged in some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.* (citations omitted). Finally, Plaintiff's allegations fail to demonstrate that he was unaware of Fidelity's alleged breach despite his own diligence. Plaintiff notes that he reached out to Fidelity in November 2006 about the alleged breach, but says he heard nothing further until he again wrote to Fidelity in May 2014. (R. 15-2, at ¶¶ 16-19). A seven-and-a-half year period in which Plaintiff took no action to inquire as to the status of his 401(k) account, which he knew had been fraudulently liquidated, cannot be said to demonstrate due diligence. Thus, Plaintiff's allegations are not sufficient to invoke the "fraud or concealment" exception for ERISA's statute of limitations as to the breach of fiduciary duty claim.

Shapiro also asserts that his Second Amended Complaint cures the statute of limitations deficiency by alleging Fidelity's failure to reimburse his 401(k) account constituted a continuing violation. (R. 15-2, at ¶ 22). Where offending acts are ongoing and continuous in nature, the "continuing violations" doctrine will equitably toll the statute of limitations, so that the series of offending acts may be challenged if one of the acts occurred within the limitations period. *See Phillips v. Cohen*, 3 F. App'x 212, 218 (6th Cir. 2001) (explaining the doctrine in the context of Title VII employment discrimination action). The Sixth Circuit has adopted a three-part inquiry for

13

determining whether a continuing violation exists. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. *Id.* Second, injury to the plaintiff must continue to accrue after that event. *Id.* Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Id.* However, a "continuing violation is occasioned by continuing unlawful acts, not continual ill effects from an original violation." *Med. Mut. of Ohio v. k. Amalia Enterprises, Inc.*, 548 F.3d 383, 394 (6th Cir. 2008) (*quoting Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). Thus, passive inaction does not a support a continuing violation theory. *Tolbert*, 172 F.3d at 940.

Here, Plaintiff argues Fidelity's ongoing failure to reimburse his account constituted a continuing violation, thus extending accrual of his cause of action. Plaintiff reasons that his cause of action did not accrue until he received formal notice from Fidelity on September 26, 2014, that his 401(k) had been terminated. However, Plaintiff's Second Amended Complaint fails to allege facts sufficient to support a continuing violation. As to the first prong of the continuing violation test, Plaintiff does not allege any wrongful acts by Fidelity which occurred after the initial liquidation of his 401(k). Although Plaintiff claims Fidelity concealed the fact that it had not reimbursed his 401(k), as the Court already noted, mere inaction does not constitute concealment. Fidelity's failure to reimburse Plaintiff's account does not constitute a renewed breach of fiduciary duty. Plaintiff also fails to satisfy the second prong of the continuing violation test because his injury from the liquidation of his 401(k) account was complete in 2006. To the extent Plaintiff complains he was continually injured by Fidelity's failure to reimburse his account, the continuing failure to reimburse constitutes a "continuing ill effect," and is not the result of continuing unlawful acts. Finally,

Plaintiff fails to meet the third prong of the continuing violation test because Fidelity's failure to reimburse his 401(k) account was not a continuing course of conduct. Although reimbursement of Plaintiff's 401(k) would have remedied Plaintiff's injury, Plaintiff's allegations fail to establish a continuing violation, as mere inaction does not support a continuing violation theory. *See Tolbert*, 172 F.3d at 940.

Furthermore, although the Court need not decide the question of whether Plaintiff had actual knowledge of the breach so as to invoke the application of three-year statute of limitations under § 1113(2), the Court notes that other courts have refused to apply the continuing violations doctrine to breach of fiduciary claims arising under § 1113(2) because to do so would read the "actual notice" requirement out of the statute. *See Edwards v. U.S. Dept. of Energy*, 371 F. Supp. 2d 859, 869 (W.D. Ky. 2005), *aff'd*, 200 F. App'x 382 (6th Cir. 2006); *see also Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991), *cert. denied*, 504 U.S. 911 (1992). "Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new." *Edwards*, 371 F. Supp. 2d at 869, *quoting Phillips*, 944 F.2d at 520. Even assuming Plaintiff did not have actual knowledge of the breach because he believed the breach had been remedied, he fails to identify any wrongful conduct by Fidelity beyond the initial breach on July 26, 2006. Plaintiff's proposed Second Amended Complaint fails to set forth facts facially establishing a continuing violation so as to extend the accrual of his breach of fiduciary duty claim. Thus, Plaintiff's Second Amended Complaint fails to demonstrate that his claims are timely, and is therefore futile.

> **2.    The facts alleged do not support a cause of action under 29 U.S.C. § 1132.**

Finally, Plaintiff asks the Court to liberally construe his pleadings to state a cause of action under 29 U.S.C. § 1132.  Specifically, Shapiro urges the Court to liberally construe his complaint as an attempt to "recover benefits" and "enforce rights" due to him under the terms of his 401(k) plan.  (R. 22, at 9).  Because Shapiro is proceeding *pro se*, his pleadings are "held to less stringent pleadings standards than formal pleadings drafted by lawyers." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  However, even liberally construed, Shapiro fails to state a claim for relief under 29 U.S.C. § 1132.

Shapiro refers generally to § 1132 in his combined Reply/Response, but he does not expressly identify a particular subsection of the statute.  (R. 22, at 9).  One provision of § 1132, subsection (a)(2), permits a participant to bring a civil action to recover for breach of fiduciary duty.  *See LaRue v. DeWolff, Boberg, & Assoc., Inc.*, 552 U.S. 248, 256 (2008) (holding that § 1132(a)(2) authorizes recovery for fiduciary breaches that impair the value of plan assets in an individual's defined contribution plan.).  Indeed, Shapiro's Second Amended Complaint seeks recovery from Fidelity under a theory of breach of fiduciary duty.  (R. 15, at ¶ 22).  However, as explained above, a claim for breach of fiduciary duty under ERISA is subject to the statute of limitations set forth in 29 U.S.C. § 1113.  *See Wright*, 349 F.3d at 327 (affirming district court's grant of summary judgment on the ground that plaintiffs' § 1132(a)(2) claims were barred by the applicable statute of limitations set forth in § 1113).  Thus, even if the Court were to liberally construe Plaintiff's claim as a cause of action under 29 U.S.C. § 1132(a)(2), the claim would still be barred by the applicable statute of limitations in § 1113.  *Id.*

A different provision of § 1132, subsection (a)(1)(B), provides a civil cause of action for a participant or beneficiary to challenge denial of benefits based on plan interpretations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). The provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). In his combined Reply/Response, Shapiro states that his pleadings can be read as an attempt to "recover benefits" and "enforce rights" due to him, language which quotes § 1132(a)(1)(B).

In the Sixth Circuit, "it is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim [for a denial of benefits] . . . unless doing so would be futile or would furnish inadequate relief. " *Hill*, 409 F.3d at 717-20. "[T]he exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991) (citations omitted). Thus, exhaustion of administrative remedies is a prerequisite to a denial of benefits action under ERISA. Here, even construing Shapiro's *pro se* claims liberally, nothing in Shapiro's filings suggests that he exhausted–much less availed himself of–his administrative remedies before bringing the present suit.

Because Shapiro has not alleged that he exhausted the administrative remedies available to him, he must establish that exhaustion is not required for his individual denial of benefits claim to proceed. The exhaustion requirement is excused where it "would be futile or would furnish inadequate relief." *Hill*, 409 F.3d at 720. In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410,

17

419 (1998) (citations omitted). This requires a "clear and positive" indication that the plan's administrative procedures would simply be futile or the remedy inadequate. (*Id.*). Again, Shapiro's Complaint does not allege any factual basis to support such a finding. Thus, because Shapiro should have exhausted his administrative remedies and has failed to do so, his Second Amended Complaint, liberally construed as an attempt to recover benefits under § 1132(a)(1)(B), should be dismissed for failing to exhaust his administrative remedies.

## V.   CONCLUSIONS AND RECOMMENDATIONS

Accordingly, for the reasons set forth above, **IT IS RECOMMENDED** that:

1.   Defendant's Motion to Dismiss Plaintiff's Amended Complaint (R. 11) be **GRANTED;**

2.   Plaintiff's Amended Complaint (R. 6) be **DISMISSED** as time barred;

3.   Plaintiff's Motion for Leave to File Second Amended Complaint (R. 15) be **DENIED WITHOUT PREJUDICE** for failure to exhaust, to the extent the Second Amended Complaint seeks to add a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B);

4.   Plaintiff's Motion for Leave to File Second Amended Complaint (R. 15) be **DENIED** as futile, to the extent the Second Amended Complaint seeks to assert a breach of fiduciary duty claim;

5.   Defendant's Alternative Motion to Dismiss Plaintiff's Second Amended Complaint (R. 25) be **DENIED AS MOOT**, the Court having already denied Plaintiff's Motion for Leave to File Second Amended Complaint; and,

6.   This matter be **DISMISSED** and **STRICKEN** from the active docket of this Court.

18

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984); *aff'd*, 474 U.S. 150 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (*citing Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may file a response to another party's objection within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

Dated this 13th day of July, 2015.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\Orders\civil cov\2014\14-143 R&R MTD.final.wpd

19